UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RAMON SUAREZ,                         :

                   Plaintiff,         :     06 Civ. 2868 (HBP)

      -against-                       :     OPINION AND
                                            ORDER
                                      :
COMMISSIONER OF SOCIAL SECURITY,
                                      :
                   Defendant.

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          Plaintiff, Ramon Suarez, brings this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

seeking judicial review of a final decision of the Commissioner

of Social Security (the "Commissioner") denying plaintiff's

application for disability insurance benefits.  Both plaintiff

and the Commissioner have moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Commissioner's motion is

denied and plaintiff's motion is granted, to the extent of

remanding this matter to the Commissioner for further administra-

tive proceedings consistent with this Opinion and Order.  Plain-

tiff's motion is denied in all other respects.

II.  Facts

    A.  Procedural Background

        Plaintiff filed an application for disability benefits pursuant to 42 U.S.C. § 423(b) on June 18, 2003 (Tr.[1] 37-39). Plaintiff claimed in his application that he had been unable to work since January 19, 2001 because of constant pain in his left shoulder (Tr. 37, 43).  On July 29, 2003, the Social Security Administration denied plaintiff's application for benefits (Tr. 29-34).  Plaintiff timely requested and was granted a hearing before an Administrative Law Judge ("ALJ") (Tr. 21-28, 35).  The ALJ, Mark Hecht, held a hearing on March 11, 2005 (Tr. 121-37), at which plaintiff appeared with counsel and testified.  In a decision dated April 20, 2005, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform "a range of light work," and, therefore, was not disabled through the date of the ALJ's decision (Tr. 19, 20).  The decision of the ALJ became the final decision of the Commissioner on January 11, 2006, when the Appeals Council denied plaintiff's request for review.[2]

---

    [1]"Tr." refers to the certified transcript of the administrative record that the Commissioner provided to plaintiff and to the court, as required by 42 U.S.C. § 405(g).

    [2]The Appeals Council "set aside" its first denial of plaintiff's request for review in order to consider additional medical information provided by plaintiff, then adhered to its decision to deny review (Tr. 4).

Plaintiff commenced this action in forma pauperis on April 12, 2006, and, on October 14, 2006, moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, dated Oct. 14, 2006 ("Pl.'s Br.")).  The Commissioner opposes plaintiff's claim for disability benefits, and has cross-moved for judgment on the pleadings pursuant to Rule 12(c) (Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings, dated Jan. 29, 2007 ("Def.'s Br.")).  The parties have consented to my exercising plenary jurisdiction over the case pursuant to 28 U.S.C. § 636(c) (Docket Item 5).

    B.  Evidence

        1.  Plaintiff's Age,
           Education and Experience

      Plaintiff was born on April 28, 1955, completed third grade in the Dominican Republic, and immigrated to the United States in 1994 (Tr. 126, 127).  He cannot read or write English or Spanish (Tr. 127).  Prior to his arrival in the United States, plaintiff worked as a motorbike mechanic (Tr. 127-28).  In the United States, plaintiff worked as the superintendent of an apartment building, where he supervised two employees, painted, plastered and cleaned, did plumbing and electrical work, and

frequently lifted objects weighing at least 50 pounds (Tr. 64, 128).  In December 1999, plaintiff injured his left shoulder while moving a refrigerator (Tr. 82, 89, 130).  Notwithstanding his injury, plaintiff continued to work as a superintendent until January 19, 2001, when he was fired (Tr. 49, 128).  Plaintiff was 45 years old when he stopped working (Tr. 125).  He has not worked again since that time (Tr. 129).

    2.  Plaintiff's Function Report

In support of his application for disability benefits, plaintiff submitted a function report to the Division of Disability Determinations of the New York State Office of Temporary and Disability Assistance (the "DDD") on or about June 30, 2003 (Tr. 71-81).[3]  In his function report, plaintiff stated that he could not "lift weights," reach with his left hand or use his left hand due to his injuries (Tr. 76).  In addition, plaintiff stated that standing, walking or sitting caused him pain (Tr. 76).  Plaintiff also stated that he was unable to carry anything when he walked to the store or to the residence of a relative (Tr. 78).  Plaintiff described the pain in his left shoulder as a dull ache that

---

[3]State agencies make the initial disability determinations for the Commissioner for most persons living in their states.  20 C.F.R. § 404.1503(a).  In New York, the DDD performs this function.  Stieberger v. Sullivan, 738 F. Supp. 716, 723 (S.D.N.Y. 1990); see also Velasquez v. Barnhart, 03 Civ. 6448 (SAS), 2004 WL 1752825 at *2 (S.D.N.Y. Aug. 4, 2004).

radiated to his back (Tr. 79).  Plaintiff reported that he took
Tylenol to relieve the pain (Tr. 81).

     3.  <u>Medical Evidence</u>

      a.  <u>Treating Physician</u>

     Douglas Schwartz, M.D., treated plaintiff's shoulder on
a monthly basis, from May 2001 through at least 2003 (Tr. 53,
88).[4]  Plaintiff did not claim any treatment before that provided
by Dr. Schwartz (Tr. 53-54).  Dr. Schwartz completed a question-
naire on July 8, 2003, which diagnosed plaintiff with chronic
left shoulder derangement, status post acromioplasty[5] (Tr. 88).
Plaintiff's symptoms were chronic left shoulder pain, which
increased with repetitive overhead use of the left arm or when
plaintiff lay on the left side, and interrupted sleep (Tr. 88).
Dr. Schwartz prescribed Bextra[6] for plaintiff (Tr. 89).  In an

_____

[4]The record does not disclose Dr. Schwartz's area of
specialization, if any.

[5]Acromioplasty is a plastic surgery to the acromion, which
is a lateral extension of the spine of the scapula, projecting
over the shoulder joint and forming the highest point of the
shoulder.  <u>Dorland's Illustrated Medical Dictionary</u> 21, 1306
(27th ed. 1988).

[6]Bextra was a non-steroidal anti-inflammatory drug
prescribed to relieve symptoms of osteoarthritis and rheumatoid
arthritis.  United States Food and Drug Administration, Public
Health Advisory:  Non-Steroidal Anti-Inflammatory Drug Products,
http://www.fda.gov/cder/drug/advisory/nsaids.htm (last visited
Mar. 25, 2009).

undated employability report, Dr. Schwartz noted that plaintiff's
treatment also included physical therapy two to three times per
week and a weekly massage (Tr. 101).

Dr. Schwart'z report also noted that plaintiff exhib-
ited full range of motion in his right shoulder, elbows, wrists,
knees, hips, spine and ankle (Tr. 93-94).  In addition, Dr.
Schwartz noted that plaintiff exhibited no limitation in his
ability to sit, stand or walk (Tr. 91).  However, plaintiff's
left shoulder exhibited a decreased range of motion and left
deltoid atrophy (Tr. 89).  Specifically, Dr. Schwartz found that
plaintiff's left shoulder exhibited a forward elevation of 135
out of 150 degrees, abduction of 130 out of 150 degrees, adduc-
tion of 20 out of 30 degrees, internal rotation of 55 out of 80
degrees and external rotation of 60 out of 90 degrees (Tr. 93).
The left deltoid and two of the rotator cuff muscles (the
infraspinatus and supraspinatus) exhibited strength of 4+ out of
5, while a third rotator cuff muscle (the subscapularis) exhib-
ited strength of 4- out of 5 (Tr. 89).

Plaintiff was limited to pushing, pulling, lifting and
carrying a maximum of ten pounds in his left arm (Tr. 90-91).
Plaintiff exhibited no limitation in his ability to sit, stand or
walk (Tr. 91).  Under the heading, "Other (e.g. postural, manipu-
lative, visual, communicative, environmental)," Dr. Schwartz

checked the box labeled "Limited" and stated "no climbing" and "remains totally disabled" (Tr. 91).

b.  <u>Examining Physicians</u>

Arthur E. Helft, M.D., a surgeon, examined plaintiff on May 1, 2003 (Tr. 82-83).  Dr. Helft wrote a letter to plaintiff's worker's compensation insurer dated May 2, 2003, which reported that after a shoulder injury in 1999, plaintiff came under the care of Dr. Schwartz, who treated him with physical therapy (Tr. 82).  Plaintiff underwent arthroscopic surgery on his shoulder on December 14, 2001 (Tr. 82).[7]  Plaintiff complained to Dr. Helft of daily pain in his left shoulder which radiated to his neck (Tr. 82).  Plaintiff took pain medication daily but did not recall the medication's name (Tr. 82).  Plaintiff limited his left arm's forward elevation and abduction to 90°, but Dr. Helft was able to perform a further forwared elevation to 150° "with complaints of pain" (Tr. 82).  Dr. Helft concluded that plaintiff had a "40% schedule loss of use of the left arm" and that "[m]aximum benefit from therapy ha[d] been achieved" (Tr. 83).

In addition, Dr. Osiris Nunez, a licensed physician in the Dominican Republic, examined plaintiff on or about November 2004.  At that time, Dr. Nunez certified that plaintiff was

---

[7]The DDD requested medical records from the physician who performed this surgery, Eric A. Crone, M.D., but Dr. Crone did not respond to the requests (Tr. 87).

"suffering from a severe lesion of the rotator bone of the left shoulder[,] [f]or which [he] recommend[ed] four months of rest and rehabilitation" (Tr. 114-15).  In March of 2005, Dr. Dionisio Bueno, also of the Dominican Republic, prescribed plaintiff dexamethasone, which is an anti-inflammatory corticosteroid, and two other medications, "Neurodon" and "Reumisone."  The record does not disclose the nature of these medications, and I have not been able to locate them in any English-language pharmaceutical dictionary (Tr. 119-20).

### 4.   Disability Examiner's Assessment

Following plaintiff's application for disability benefits, a disability examiner[8] identified as "D. Ingram" deter-mined plaintiff's residual functional capacity on behalf of the DDD based on the written submissions of plaintiff and his physi-cians.  The record does not indicate whether Ingram was a physi-

---

[8]The Social Security regulations draw a distinction between "medical consultants" and "disability examiners."  A medical consultant must be a licensed physician, optomotrist or podiatrist, or a qualified speech-language pathologist and must meet "the appropriate qualifications for his or her specialty." 20 C.F.R. § 404.1616(b).  A disability examiner must only be "qualified to interpret and evaluate medical reports and other evidence relating to the claimant's physical or mental impairments and as necessary to determine the capacities of the claimant to perform substantial gainful activity." § 404.1615(c).

cian (Tr. 29).[9]  Ingram opined that plaintiff could frequently
lift and/or carry a maximum of ten pounds and occasionally lift
or carry a maximum of 20 pounds because there was no limitation
or loss of movement and strength in his dominant arm, elbow and
shoulder (Tr. 96).  Ingram also noted that plaintiff's ability to
reach was limited because his left shoulder exhibited a limited
range of motion (Tr. 97).  Finally, because Dr. Schwartz stated
that plaintiff had limited use of his left arm, but no other
physical ability limits, Ingram opined that plaintiff retained
the ability to engage in substantial gainful activity where he
would not have to use his left arm and shoulder (Tr. 99).

### 5.  Administrative Hearing Testimony

Plaintiff, represented by counsel, testified at the
administrative hearing that he experiences severe pain every day,
but if he doesn't move, "it sort of contains the pain a little
bit" (Tr. 131-32).  Plaintiff cannot lift anything with his left

---

[9]The DDD's denial of plaintiff's application for disability
benefits was based solely on Ingram's assessment (Tr. 29).  This
appears to have violated the Social Security regulations.  See 20
C.F.R. § 404.1615(c)(2) (disability examiners may make disability
determinations without the assistance of medical consultants only
when "there is no medical evidence to be evaluated . . . and the
[claimant] fails or refuses, without a good reason, to attend a
consultative examination"); accord Tornatore v. Barnhart, 05 Civ.
6858 (GEL), 2006 WL 3714649 at *5 (S.D.N.Y. Dec. 12, 2006).
Here, there was medical evidence to be evaluated, and there was
no indication that plaintiff failed or refused without good
reason to attend a consultative examination.

arm, but he can hold a cup of coffee with his left hand if it is "very very light" (Tr. 132).  Plaintiff wears his arm in a sling in the afternoon, "when the pain gets really bad" (Tr. 132). Plaintiff has difficulty "in any position," i.e., regardless of whether he is sitting, standing or walking (Tr. 132-33).

On examination by his attorney, plaintiff gave the following description of the pain he experiences while walking: "Like if I try to walk fast, the pain gets worse and it's like a pulling pain on this side" (Tr. 134).  Plaintiff's attorney also asked plaintiff whether he had any problems using his right arm (Tr. 134), but plaintiff's response is not clear from the record (Tr. 135 ("If I lift anything, like five -- even five or six pounds, I feel it here.  It bothers my [INAUDIBLE].  It like -- the nerve goes from here to here or something.  I don't know.")).

Plaintiff received shoulder surgery and physical therapy following his injury, which was paid for by worker's compensation insurance (Tr. 130-31).  The physical therapy and the surgery helped him very little (Tr. 130).  After plaintiff's insurance coverage expired in June 2004 (Tr. 136), plaintiff took Advil, which, according to plaintiff, relieved his pain "a little" (Tr. 131).[10]  In late 2004 and/or early 2005, plaintiff

---

[10]Plaintiff's counsel has submitted a letter indicating that plaintiff's insurance coverage expired in 2004.

received x-rays, injections and pills in the Dominican Republic, but they did not ameliorate his symptoms (Tr. 129).

III.  Analysis

    A.  The Applicable Legal Principles

        1.  Standard of Review

        The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or is based upon an erroneous legal standard.  42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).  The term "substantial evidence" has been defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Burgess v. Astrue, supra, 537 F.3d at 127-28; Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Veino v. Barnhart, supra, 312 F.3d at 586; Tejada v. Apfel, supra, 167 F.3d at 773-74; Quinones ex rel. Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997).

> The reviewing court does not conduct a <u>de novo</u> review
> as to whether the claimant is disabled, <u>Parker v.
> Harris</u>, 626 F.2d 225, 231 (2d Cir. 1980), nor may it
> substitute its own judgment for that of the Commis-
> sioner. <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir.
> 1991); <u>Valente v. Sec'y of Health & Human Servs.</u>, 733
> F.2d 1037, 1041 (2d Cir. 1984).  When the Commis-
> sioner's decision is not supported by substantial
> evidence, a reviewing court must reverse the adminis-
> trative decision because "the entire thrust of judicial
> review under the disability benefits law is to insure a
> just and rational result between the government and a
> claimant . . . ."  <u>Williams ex rel. Williams v. Bowen</u>,
> 859 F.2d 255, 258 (2d Cir. 1988).

<u>Lee v. Apfel</u>, CV 99-2930 (LDW), 2000 WL 356411 at *2 (E.D.N.Y.

Apr. 3, 2000); <u>see</u> <u>Veino v. Barnhart</u>, <u>supra</u>, 312 F.3d at 586

("Where the Commissioner's decision rests on adequate findings

supported by evidence having rational probative force, we will

not substitute our judgment for that of the Commissioner.").

Moreover, the Commissioner's decision must be affirmed if it is

supported by substantial evidence, even if there is substantial

evidence supporting plaintiff's position.  <u>Persico v. Barnhart</u>,

420 F. Supp.2d 62, 63 (E.D.N.Y. 2006), <u>citing</u> <u>Jones v. Sullivan</u>,

<u>supra</u>, 949 F.2d at 59-60.

　　　　"Reversal and entry of judgment for the claimant is

appropriate only 'when the record provides persuasive proof of

disability and a remand for further evidentiary proceedings would

serve no purpose.'" <u>Cruz ex rel. Vega v. Barnhart</u>, 04 Civ. 9794

(DLC), 2005 WL 2010152 at *8 (S.D.N.Y. Aug. 23, 2005), <u>modified

on other grounds on reconsideration</u>, 2006 WL 547681 (S.D.N.Y.

Mar. 7, 2006), <u>quoting</u> <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d

Cir. 1980); accord Rivera v. Sullivan, 923 F.2d 964, 970 (2d Cir.
1991); Babcock v. Barnhart, 412 F. Supp.2d 274, 284 (W.D.N.Y.
2006); Buonviaggio v. Barnhart, 04 Civ. 357 (JG), 2005 WL 3388606
at *5 (E.D.N.Y. Dec. 2, 2005); Rivera v. Barnhart, 379 F. Supp.2d
599, 604 (S.D.N.Y. 2005); see 42 U.S.C. § 405(g) ("The [district]
court shall have the power to enter, upon the pleadings and
transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing.").

   2.   Determination of Disability

     Under Title II of the Social Security Act, 42 U.S.C.
§§ 401 et seq., a claimant is entitled to disability benefits if
he or she can establish an "inability to engage in any substan-
tial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to last for a
continuous period of not less than 12 months."  42 U.S.C. §§
423(d)(1)(A), 1382c(a)(3)(A); see also Barnhart v. Walton, 535
U.S. 212, 217-22 (2002) (both impairment and inability to work
must last twelve months).  The impairment must be demonstrated by
"medically acceptable clinical and laboratory techniques," 42
U.S.C. § 423(d)(3), and it must be

          of such severity that [the claimant] is not only unable
          to do his previous work but cannot, considering [the
          claimant's] age, education, and work experience, engage
          in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if [the claimant] applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In addition, to obtain disability benefits, the claimant's disability must have commenced prior to the expiration of his or her insured status. 20 C.F.R. §§ 404.130, 404.315.

The Commissioner must consider both objective and subjective factors when assessing a disability claim, including: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant and family or others testify; and (4) the claimant's educational background, age and work experience. Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Williams ex rel. Williams v. Bowen, supra, 859 F.2d at 259; Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983).

"In evaluating disability claims, the [Commissioner] is required to use a five-step sequence, promulgated in 20 C.F.R. §§ 404.1520, 416.920." Bush v. Shalala, 94 F.3d 40, 44 (2d Cir. 1996).

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where . . . the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. . . . Where the claimant does suffer a severe impairment, the third inquiry is whether, based solely on medical

14

> evidence, he has an impairment listed in Appendix 1 of the regulations or equal to an impairment listed there. . . . If a claimant has a listed impairment, the Commissioner considers him disabled.  Where a claimant does not have a listed impairment, the fourth inquiry is whether, despite his severe impairment, the claimant has the residual functional capacity to perform his past work. . . . Finally, where the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); Shaw v. Chater, supra, 221 F.3d at 132; Brown v. Apfel, supra, 174 F.3d at 62; Tejada v. Apfel, supra, 167 F.3d at 774; Rivera v. Schweiker, supra, 717 F.2d at 722.

Step four requires that the ALJ make a determination as to the claimant's RFC.  See Sobolewski v. Apfel, 985 F. Supp. 300, 309 (E.D.N.Y. 1997).  RFC is defined as "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  To determine RFC, the ALJ makes a "function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch."  Sobolewski v. Apfel, supra, 985 F. Supp. at 309.  The results of this assessment determine the claimant's ability to perform the exertional demands of sustained

work, and may be categorized as sedentary, light, medium, heavy
or very heavy.  20 C.F.R. §§ 404.967, 416.967; see Rodriguez v.
Apfel, 96 Civ. 8330 (JGK), 1998 WL 150981 at *7 n.7 (S.D.N.Y.
Mar. 31, 1998).

          The claimant bears the initial burden of proving
disability with respect to the first four steps.  Burgess v.
Astrue, supra, 537 F.3d at 128; Green-Younger v. Barnhart, supra,
335 F.3d at 106; Balsamo v. Chater, supra, 142 F.3d at 80.  Once
the claimant has satisfied this burden, the burden shifts to the
Commissioner to prove the final step -- that the claimant's
residual functional capacity allows the claimant to perform some
work other than the claimant's past work.  Balsamo v. Chater,
supra, 142 F.3d at 80; Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.
1986).

     B.   The ALJ's Decision

          In his decision, the ALJ summarized the relevant
evidence and concluded that plaintiff had a severe impairment,
but he retained the RFC to perform "light work activity" and "a
range of light work" (Tr. 19).  The ALJ credited Dr. Schwartz's
report that plaintiff had no limitation in his ability to sit,
stand and walk (Tr. 19).  The ALJ found that plaintiff's subjec-
tive complaints of pain were "not entirely credible" and "exag-
gerated" because there was no objective medical evidence that

                              16

plaintiff had difficulty walking and because plaintiff had not received regular treatment for his pain after 2003 (Tr. 18-19).

The fact that plaintiff could perform "light work activity" and "a range of light work" was demonstrated, according to the ALJ, by the opinions of the disability examiner, Dr. Helft and Dr. Schwartz.  The ALJ stated that "consideration was given to the opinion of the reviewing physician who found [that plaintiff] was able to perform the exertional requirements of light work," and cited to the RFC assessment of the disability examiner, Ingram (Tr. 19).  The ALJ then stated that "Dr. Helft found only that the claimant has a 45% loss of use of the shoulder and left arm, which also indicates that he could perform a range of light work" (Tr. 19 (citation omitted)).  Finally, the ALJ stated that "[a]lthough [Dr. Schwartz] found that [plaintiff] could not lift or carry over 10 pounds, even if that is the case, the range of light work [plaintiff] could perform would not be [] significantly reduced" (Tr. 19).  The ALJ did not give any further explanation of how these three opinions established that plaintiff could perform light work.

The ALJ determined that (1) plaintiff had not engaged in substantial gainful activity for more than twelve months,[11]

_____

[11]At page one of his decision, the ALJ stated that plaintiff last worked in 2001 (Tr. 17).  At page three of his opinion, however, the ALJ stated that plaintiff has not engaged in substantial gainful activity since June 18, 2003 (Tr. 19).
                                        (continued...)

(2) plaintiff had an unspecified impairment that was severe within the meaning of the regulations, (3) plaintiff's impairment was not listed in Appendix 1 of the regulations or medically equal to any impairment listed there, (4) plaintiff had the RFC to perform "the physical exertion requirements of light work" and the RFC to perform "a range of light work," (5) plaintiff was unable to perform any of his past relevant work, (6) plaintiff was a younger individual who could not communicate in English, and (7) Rule 202.16 of Table 2 in Appendix 2 to Subpart P of Title 20 of the Code of Federal Regulations (known as "the Grid") "indicate[d] a conclusion that, considering [plaintiff's] resid-ual functional capacity, age, education, and work experience, he is not disabled" (Tr. 20-21).  As a result, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act and, thus, not eligible for disability benefits (Tr. 21).[12]

---

[11](...continued)
Although these two statements are not inconsistent, the ALJ did not explain why he did not use the same date for the date of plaintiff's last employment and last substantial gainful activity.

[12]Throughout his decision, the ALJ erroneously characterized plaintiff's application as being for supplemental security income, rather than for disability benefits (Tr. 17, 19, 20). However, the error is negligible because the disability analysis under both sets of regulations is identical. Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980); Rivera v. Harris, 623 F.2d 212, 215 n.4 (2d Cir. 1980); Davis v. Callahan, 96 Civ. 9367 (SAS), 1997 WL 438772 at &1 n.3 (S.D.N.Y. Aug. 4, 1997).

C.   <u>Plaintiff's Arguments</u>

Plaintiff claims that the ALJ's decision should be reversed and that the matter should be remanded for four reasons: (1) the ALJ incorrectly relied on the disability examiner's opinion (Pl.'s Br. 14-17); (2) the ALJ failed to develop the record sufficiently concerning plaintiff's treatment (Pl.'s Br. 19-20); (3) the ALJ failed to consider plaintiff's non-exertional limitations in assessing plaintiff's RFC (Pl.'s Br. 17-19); and (4) plaintiff's RFC rendered plaintiff disabled as of his 50th birthday (Pl.'s Br. 4).  The Commissioner does not dispute that the ALJ erred in some respects, but nevertheless maintains that his decision should be affirmed.

1.   <u>The Disability Examiner's Opinion</u>

Plaintiff first claims, without citation to legal authority, that "[r]eliance on the opinion of a misidentified New York state claims representative is legal error fatal to the ALJ['s] denial decision and requires remand of this case for further administrative proceedings (Plaintiff's Reply, dated Feb. 20, 2007 ("Pl.'s Reply") 2; <u>see also</u> Pl.'s Br. 14-17).

The opinion of a disability examiner falls into the Social Security regulations' broad definition of "evidence."  <u>See</u> 20 C.F.R. § 404.1512(b) ("Evidence is anything you or anyone else

submits to us or that we obtain that relates to your claim."). The opinion of a disability examiner, by itself, does not constitute substantial evidence sufficient to support the ALJ's decision.  See Gladding v. Comm'r of Soc. Sec., 7:05-CV-1505 (LEK/GHL), 2008 WL 4104690 at *9-*10 (N.D.N.Y. Sept. 3, 2008); Pratt v. Astrue, 7:06-CV-551 (LEK/DRH), 2008 WL 2594430 (N.D.N.Y. June 27, 2008) (remanding to ALJ where only evidence that supported ALJ's determination that plaintiff could lift more than ten pounds was opinion of disability examiner, and that opinion did not constitute substantial evidence).  However, there is no legal authority of which I am aware that states that the ALJ may not consider a disability examiner's opinion in conjunction with other evidence.

Furthermore, the misidentification of a non-physician as a physician, without more, does not violate the regulations. The "treating physician rule," set forth in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."  Shaw v. Chater, supra, 221 F.3d at 134; accord Halloran v. Barnhart, supra, 362 F.3d at 32.  Were an ALJ to rely erroneously on the opinion of a non-physician to reject an actual treating physician's opinion, the ALJ would violate the treating physician

20

rule.  Here, although the ALJ erroneously identified the disabil-
ity examiner as a physician, the ALJ did not credit that "physi-
cian's" opinion to the exclusion of plaintiff's actual treating
and examining physicians.  Thus, the ALJ did not commit legal
error, notwithstanding his misidentification of the disability
examiner.

### 2.  The Development of the Record

Plaintiff next argues that the ALJ's statement that
"the evidence does not document that the claimant has received
regular treatment since 2003" (Tr. 18-19) was not supported by
substantial evidence because the ALJ made no attempt to develop
the record concerning plaintiff's treatment after 2003 (Pl.'s Br.
20).  However, the ALJ did develop the record concerning plain-
tiff's treatment after 2003.  Plaintiff testified at the hearing
that he stopped receiving treatment after his insurance coverage
ran out, which occurred in June 2004 (Tr. 136).  Plaintiff also
testified that he "went for three months" to the Dominican
Republic "just recently" (presumably late 2004 and/or early 2005)
and that he had some unsuccessful treatments there (Tr. 129,
131).  Plaintiff also testified that he was taking only Advil for
pain (Tr. 131).  Taken as a whole, plaintiff's testimony suggests
that from approximately June 2004 through the time he left for
the Dominican Republic, plaintiff was receiving no treatment for

his shoulder other than Advil.  Thus, plaintiff's testimony
constitutes substantial evidence supporting the ALJ's statement
that "the evidence does not document that the claimant has
received regular treatment since 2003" (Tr. 18-19).

Plaintiff also argues that the ALJ committed a legal
error by failing to request treatment records from plaintiff's
physician in the Dominican Republic (Pl.'s Br. 20).  Under the
Social Security regulations, the Commissioner has an affirmative
duty to develop a claimant's "complete medical history for at
least the 12 months preceding the month in which" the claimant
files his or her application and to "make every reasonable effort
to help [the claimant] get medical reports from [his or her] own
medical sources when [he or she] give[s] [the Commissioner]
permission to request the reports."  20 C.F.R. § 404.1512(d); see
also Shaw v. Chater, supra, 221 F.3d at 131; Pratts v. Chater, 94
F.3d 34, 37 (2d Cir. 1996).  This duty may be performed by the
state agencies that make the initial disability determination for
the Commissioner.  See 20 C.F.R. § 404.1502 ("We or us refers to
either the Social Security Administration or the State agency
making the disability or blindness determination.").  When a
claimant's testimony reveals that plaintiff received treatment
not otherwise disclosed in the record, the ALJ has a duty to
"take steps to contact" and at least "attempt to obtain" materi-

als or reports reflecting the course of treatment.  Rosa v.
Callahan, 168 F.3d 72, 80 (2d Cir. 1999).

      Here, the DDD requested reports from all of the treat-
ing physicians that plaintiff identified in his application for
benefits and obtained reports from all of the physicians who
responded (Tr. 87).  Plaintiff received treatment in the Domini-
can Republic after he appealed the DDD's initial denial of
benefits; thus, no treatment records from the Dominican Republic
existed at the time of his initial submissions to the DDD (Tr.
44-47) or his submissions on appeal (Tr. 53-54).

      Furthermore, the ALJ obtained all of the records from
plaintiff's physicians in the Dominican Republic that plaintiff's
counsel represented were available (Tr. 136-37).  Toward the end
of the hearing before the ALJ, plaintiff's counsel informed the
ALJ that plaintiff had obtained Spanish-language physician's
"statements" from his physician in the Dominican Republic, and
requested a week in which to submit translations to the ALJ (Tr.
135-36).  The ALJ asked, "Can you submit that additional evidence
and translations within a week?"  Plaintiff's counsel stated,
"Absolutely," and the ALJ responded, "Fine. . . .  No further --
evidence and testimony to be introduced. . . .  We'll keep the
record open as requested by [plaintiff's counsel] for one week.
After that you'll receive a new [d]ecision in the mail" (Tr. 136-
37).  Plaintiff's counsel said, "Thank you," and did not other-

wise object to the ALJ's proposal (Tr. 137).  Plaintiff's counsel

did not indicate at the hearing -- and has not subsequently

indicated -- that plaintiff's physicians in the Dominican Repub-

lic had any additional records or that plaintiff required assis-

tance in order to request additional records.  Therefore, there

was no reason to believe that additional records were available,

and the ALJ had no further duty to attempt to contact plaintiff's

physicians or to obtain their records.[13]

### 3.  Non-Exertional Limitations

Plaintiff aruges that the ALJ erred by failing to

"identify and analyze" plaintiff's non-exertional limitation,

namely, a limited ability to reach with his left arm, and that

the ALJ's "use of the [Grid] was improper" because plaintiff's

non-exerional impairment was "not factored into the [Grid] rules"

---

[13]Plaintiff further argues that the ALJ erred because he (1) did not request plaintiff's medical records himself, but rather relied on the DDD's prior requests for such records, and (2) did not contact Dr. Schwartz for clarification concerning his opinion (Pl.'s Reply 3-5).  I do not address these arguments, however, because they were raised for the first time in plaintiff's reply brief, and the Commissioner did not have the opportunity to respond to them.  See Salley v. Graham, 07 Civ. 455 (GEL), 2008 WL 818691 at *3 n.3 (S.D.N.Y. Mar. 27, 2008) ("Because [the petitioner] did not raise [certain] claims in his initial petition and, therefore, deprived the government of an opportunity to respond to them, these claims are not a basis for relief."); United States ex rel. Morgan v. McElroy, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.").

(Pl.'s Br. 17-18).  The Commissioner responds that the ALJ
properly used the Grid because plaintiff's non-exertional limita-
tion did not "significantly diminish his ability to perform light
work" (Def.'s Br. 11-12).

      Whether a claimant's non-exertional limitations signifi-
cantly diminish the claimant's ability to engage in light work
is a question of fact.  Rich v. Apfel, 97 Civ. 2288 (RPP), 1998
WL 458056 at *11 n.6 (S.D.N.Y. Aug. 5, 1998), citing Smith v.
Schweiker, 719 F.2d, 723, 725 (4th Cir. 1984).  However, the
question of whether an ALJ is precluded from relying exclusively
on the Grid is a question of law.  Bapp v. Bowen, supra, 802 F.2d
at 604.

      It is well-established that when a claimant retains the
RFC to perform at least one of the categories of work listed on
the Grid, e.g., light work, and when the claimant's educational
background and other characteristics are also captured by the
Grid, the ALJ may rely exclusively on the Grid in order to
determine whether the claimant retains the RFC to perform some
work other than his or her past work.  Butts v. Barnhart, 388
F.3d 377, 383 (2d Cir. 2004) ("In the ordinary case, the Commis-
sioner meets his burden at the fifth step by resorting to the
applicable medical vocational guidelines (the [Grid]).").
However, "exclusive reliance on the [Grid] is inappropriate"
where non-exertional limitations "significantly diminish [a

claimant's] ability to work." <u>Butts v. Barnhart</u>, <u>supra</u>, 388 F.3d at 383, <u>quoting</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation omitted); <u>Bapp v. Bowen</u>, <u>supra</u>, 802 F.2d at 603.  A claimant's ability to work is significantly diminished when the claimant is "unable to perform the full range of employ-ment indicated by the [Grid]," <u>Bapp v. Bowen</u>, <u>supra</u>, 802 F.2d at 603, or if the Grid fails "to describe the full extent of [the] claimant's physical limitations," <u>Butts v. Barnhart</u>, <u>supra</u>, 388 F.3d at 383; <u>see</u> <u>also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the indi-vidual's particular limitations must be considered."); 20 C.F.R. § 1569a(d), pt. 404, subpt. P, app. 2, § 200.00(e).  If the Grid is not applicable, the Commissioner must obtain the testimony of a vocational expert in order to prove "that jobs exist in the economy which the claimant can obtain and perform." <u>Butts v. Barnhart</u>, <u>supra</u>, 388 F.3d at 383.

The principal problem with the ALJ's decision is that he failed to explain or even address the extent to which plain-tiff's non-exertional limitations diminished plaintiff's work capacity beyond the disability resulting from plaintiff's exertional limitations.  Thus, he never made the finding neces-sary to determine whether the testimony of a vocational expert was necessary.

Plaintiff injured his non-dominant left shoulder, but retained the ability to perform the tasks described in the definition of light work in most circumstances.[14]   He retained at least 60% of the range of motion of his left shoulder and the ability to lift ten pounds with his left arm (Tr. 83, 93).   He retained full grasping strength in both of his hands (Tr. 82, 91).   And he retained full use of the entire rest of his body, including his back, his legs, his hands, wrists and elbows, as well as his right arm and shoulder.   As a result, plaintiff could lift 20 pounds with his right arm, but not with his left.

Nevertheless, plaintiff's left shoulder impairment affected his ability to reach and to lift large or unwieldy objects.   Plaintiff's treating physician documented chronic left shoulder pain, which increased with repeated overhead use of his left arm (Tr. 88).   Plaintiff retained full strength in his right arm, so he was able to lift any object that only required the use

---

[14]The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

of that arm.  However, plaintiff would not have been able to reach for and manipulate any items that required the use of both of his arms over his head, due to his left shoulder's limited range of motion.  In addition, plaintiff would not have been able to lift bulky items weighing over ten pounds that required two hands, such as large boxes or folders that lacked handles.

The ALJ did not address the issue of whether plain-tiff's limited ability to reach[15] -- a non-exertional limitation -- and lift objects requiring both hands or arms significantly diminished his ability to perform light work.  Rather, the ALJ stated, in conclusory fashion, that plaintiff's 40% loss of use of the shoulder and left arm "also indicate[d] that he could perform a range of light work" (Tr. 19).  The ALJ did not cite to any evidence -- and I do not otherwise note any -- concerning the relationship between a claimant's 40% loss of use of his left shoulder and arm, and his ability to perform light work.

Thus, although the ALJ was aware of plaintiff's non-exertional limitations, he never addressed the effect of these limitations on plaintiff's ability to meet the exertional demands of light work, i.e. he never made a determination concerning the effect, if any, of plaintiff's limited ability to reach on plaintiff's ability to meet the exertional requirements of light

---

[15]The regulations categorize limitations on reaching as non-exertional.  20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi).

work.  Accordingly, the current state of the record does not contain all the information required to determine if the testimony of a vocational expert was necessary.

The Commissioner cites Davis v. Callahan, 96 Civ. 9367 (SAS), 1997 WL 438772 (S.D.N.Y. Aug. 4, 1997), and Crean v. Sullivan, 91 Civ. 7038 (PKL), 1992 WL 183421 (S.D.N.Y. July 27, 1992), as persuasive authority to the contrary.  Davis involved a claimant who allegedly experienced occasional non-exertional limitations on his ability to climb, balance, stoop, etc., which were documented exclusively by non-examining physicians.  1997 WL 438772 at *12.  These alleged limitations had no effect on the claimant's ability to perform the exertional requirements of sedentary work, so the ALJ's failure to consider those limitations was harmless error.  Here, in contrast, plaintiff's non-exertional limitations were documented by an examining and a treating physician and they affected his ability to perform at least two types of light work activities, namely, lifting and manipulating objects overhead.

In Crean, the ALJ found that the claimant, whose right shoulder had a range of motion limited to 90 degrees, "had the residual functional capacity to perform the physical exertion requirements for the full range of sedentary work listed in 20 C.F.R. § 404.1567(a), except for lifting objects with his right arm above his shoulders."  1992 WL 183421 at *3.  The district

29

court found that the ALJ was correct in applying the Grid to
determine the availability of jobs for individuals like the
claimant because the claimant's limited shoulder motion "d[id]
not significantly compromise the range of work for which the
[claimant] [wa]s otherwise qualified."  1992 WL 183421 at *5.
However, sedentary work requires only "occasional" lifting and
carrying of objects weighing up to ten pounds, 20 C.F.R.
§ 404.1567(a), whereas light work requires "frequent" lifting and
carrying of such objects, as well as "occasional" lifting and
carrying of 20-pound objects, § 404.1567(b).  As a result, a
claimant with limited reaching and lifting ability in one arm may
be significantly affected in his or her ability to perform light
work, but only negligibly affected in his or her ability to
perform sedentary work, as was the case in Crean.  Therefore,
neither case persuades me to find that the ALJ was correct in
relying solely on the Grid in this case.

        "A remand is proper where . . . error is found in an
ALJ's failure to apply correctly the distinction between cases
where reliance on the [G]rid suffices and those where the testi-
mony of a vocational expert is essential to a denial of bene-
fits."  Butts v. Barnhart, supra, 388 F.3d at 387.  On remand,
the ALJ should expressly address whether plaintiff's non-exertio-
nal limitations significantly limit his ability to meet the

exertional requirements of light work, and, if so, should obtain
the testimony of a vocational expert.

### 4.   Plaintiff's Disability at Age 50

Finally, plaintiff argues that, assuming that he did
retain the RFC to perform light work, the Grid directed the ALJ
to conclude that he was disabled when he reached the age of 50
(Pl.'s Br. 4).

According to the Grid, an individual who is 50 years of
age or older, who is illiterate or unable to communicate in
English, and who has either no previous work experience or
experience consisting of unskilled work, should be considered
disabled.  20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 2.  Plain-
tiff turned 50 between the date of the hearing and the date of
the ALJ's decision, and is illiterate, but he has not addressed
the issue of whether his prior work experience as a superinten-
dent constituted unskilled work.

Plaintiff's past work experience as a superintendent
falls outside the category of unskilled work.  According to the
regulations, unskilled work is "work which needs little or no
judgment to do simple duties that can be learned on the job in a
short period of time."  20 C.F.R. § 404.1568(a).  A job may be
classified as semi-skilled work, however, "where coordination and
dexterity are necessary, as when hands or feet must be moved

31

quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).
Plaintiff's job tasks as superintendent, which included the
supervision of two employees, painting, plastering, and doing
plumbing and electrical work, all required judgment, and most
required considerable coordination and dexterity that could not
be learned quickly.  Therefore, plaintiff's past work was not
unskilled work, and, as a result, the Grid did not dictate the
conclusion that plaintiff was disabled.

          Second, regardless of the skill level of plaintiff's
prior work, this Court's authority extends only to reviewing the
ALJ's decision, which applied to a request for disability bene-
fits covering the period from January 19, 2001 through the date
of the ALJ's decision (Tr. 20, 137).  Plaintiff had not yet
turned 50 during that time period, and therefore, a reversal of
the ALJ's decision at this juncture would not be appropriate.
See Toro v. Chater, 937 F. Supp. 1083, 1094 (S.D.N.Y. 1996); Lora
v. Massanari, 00 Civ. 8958 (BSJ)(RLE), 2002 WL 655208 at *7
(S.D.N.Y. Apr. 18, 2002).

IV.  Conclusion

          Accordingly, for all the foregoing reasons, the Commis-
sioner's motion for judgment on the pleadings is denied and
plaintiff's motion is granted to the extent that the matter is
remanded to the Commissioner for further administrative proceed-

ings consistent with this Opinion and Order.  Plaintiff's motion

is denied in all other respects.


Dated:   New York, New York
         March 26, 2009


                                    SO ORDERED


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies transmitted to:

William Gottlieb, Esq.
Axelrod and Gottlieb
396 Broadway, Suite 902
New York, New York  10013

John E. Gura, Jr., Esq.
Assistant United States Attorney
Southern District of New York
3rd Floor
86 Chambers Street
New York, New York  10007


                        33